[No. 20772-5-I.   Division One.   June 12, 1989.]

THE STATE OF WASHINGTON, *Respondent*, v. LESLEY WAYNE SMITH, *Appellant*.

*Julie A. Kesler* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Barbara Linde, Deputy,* for respondent.

WINSOR, J.—Lesley Wayne Smith appeals his conviction for attempted first degree murder. He contends that: (1) his confession was inadmissible because there was no independent evidence of the corpus delicti; (2) the prearrest frisk and search of the car's passenger compartment were unreasonable; (3) he was illegally arrested pursuant to an unconstitutional ordinance; and (4) his consent to search the car trunk was involuntary because the officer threatened to impound the car and obtain a search warrant if Smith did not consent. We reverse.

On December 6, 1986, just after 1 a.m., Bellevue Police Lieutenant Bourgette was on patrol when he received a broadcast that a taxi cab had been stolen in the Factoria area. Almost immediately after hearing the radio broadcast, Bourgette observed vehicle headlights in Robinswood Park. Bourgette decided to investigate to see whether the vehicle was the stolen taxi.

As Bourgette neared the parked car he could see that it was not a taxi, but he decided to contact the car's occupants because their presence in the park violated a Bellevue city ordinance closing parks between 10 p.m. and 7 a.m. Bourgette saw three adult males in the car; one in the front passenger seat and two in the backseat. He shone a flashlight into the car and saw Smith, who was sitting in the front passenger seat, place a beer bottle under his coat. It is

a violation of a Bellevue city ordinance to drink alcohol in a park.

Bourgette asked the occupant in the left rear seat, Ural Daniels, to roll down his window. Daniels did not comply. The occupant of the right rear seat, Steven Brown, however, stepped out of the car. Bourgette asked Brown for identification and an explanation for their presence in the park. As Brown was looking through his wallet for his identification, Bourgette noticed a concealed weapons permit. Bourgette asked Brown whether he was presently armed. Brown said he was not, but that he had a gun under the front seat of the car. At that point Bourgette called for an additional police unit.

When Officer Dingfield arrived he patted down Brown, Smith, and Daniels for weapons. A knife was found strapped to Smith's leg. Dingfield then searched the car's front seat for Brown's gun. He found a loaded .41 magnum revolver in a holster, a loaded magazine for a 9 mm. weapon, two knives, and a box of .41 magnum ammunition. Bourgette initially believed that the 9 mm. magazine was for an illegal automatic weapon, so he called for additional units. While waiting for the additional units, Dingfield advised Brown, Daniels, and Smith of their *Miranda*[1] rights. None of the men requested a lawyer.

The officers asked Brown where the gun for the 9 mm. clip was. Brown said that it was in his backpack on the backseat. Dingfield entered the passenger compartment of the car to get the weapon. When the other officers arrived, Bourgette advised the three men that they were under arrest for violating park rules. Smith and Brown were cooperative, but Daniels was belligerent and agitated.

Smith, the renter of the vehicle, was asked for permission to search the car. He hesitated until an officer told him that the car would be impounded and a search warrant sought if Smith did not consent. Smith then consented to a search of

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

the vehicle. A search of the car's locked trunk revealed a large ammunition box, a new pick and shovel, some tarps or plastic rain gear, some rope, a large bag of lime, a compound bow, and razor tip arrows. The ammunition box contained several knives, a disassembled shotgun, a CO2 pellet pistol, a slingshot, and a wooden stick with a spiked ball at the end of a length of chain.

After the search of the car, one of the officers questioned Smith further. The officer stated that the items found in the car did not fit Smith's prior statements. Smith eventually told the officer that Brown had hired him to kill Daniels for $1,500. Smith told the officer to look in his shirt pocket, where the officer found a leather pouch with 15 $100 bills in it.

Smith then divulged details of the murder plot: Smith had selected a site on Snoqualmie Pass where he planned to dig a grave, lie in wait, and then, when Brown brought Daniels to the spot, shoot Daniels with his bow and arrow. Daniels would then be buried in the grave, and the lime would be used to speed decomposition. Smith and Brown had driven to the chosen site that afternoon to drop off Smith, but because there were campers in the area they altered their plans. Instead, they went together to pick up Daniels. The new plan called for them to drive to the east side of Snoqualmie Pass where they would commit the murder outright. Smith was taken to the Bellevue Police Department where he confessed.

Smith was charged with attempted murder in the first degree. Prior to trial, Smith brought a motion to suppress the physical evidence and his statements. He argued that: (1) the arrest was an illegal pretext arrest pursuant to an unconstitutional ordinance; (2) the patdown was illegal since there was no particularized suspicion that Smith had weapons; and (3) the consent to search the car trunk was involuntary because the officer's threat to impound the car and obtain a search warrant was improper. The trial court denied the motion.

The case was tried to a jury. Smith objected to the admission of his confession, claiming that the State failed to independently establish the corpus delicti of attempted murder. The trial court overruled the objection and Smith was found guilty of attempted first degree murder.

## Corpus Delicti

■ Except in a few jurisdictions, the general rule is well settled in this country that an extrajudicial confession of guilt by one accused of a crime, standing alone, is not sufficient to warrant or sustain a conviction. *See, e.g., Wong Sun v. United States,* 371 U.S. 471, 488–89, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *State v. Parker,* 315 N.C. 222, 337 S.E.2d 487, 491 (1985); Annot., *Corroboration of Extrajudicial Confession or Admission,* 45 A.L.R.2d 1316 (1956). Courts differ, however, as to the extent and quality of the additional evidence that is required. The federal courts and a growing number of state courts merely require that there be corroborative evidence that establishes the trustworthiness of the confession. *See, e.g., Opper v. United States,* 348 U.S. 84, 99 L. Ed. 101, 75 S. Ct. 158, 45 A.L.R.2d 1308 (1954); *State v. Parker, supra.* But the vast majority of jurisdictions, including Washington, still adhere to a rule requiring independent evidence of the corpus delicti. *Bremerton v. Corbett,* 106 Wn.2d 569, 577–78, 723 P.2d 1135 (1986).

The corpus delicti usually consists of evidence of two elements: (1) an injury or loss which is penally proscribed (*e.g.,* in an unlawful homicide, a dead person; in an arson, a burned building); and (2) a criminal act as the cause of the injury or loss. *Corbett,* 106 Wn.2d at 573–74. The independent proof of the corpus delicti is sufficient if it supports a logical and reasonable inference that the charged crime occurred. The independent evidence need not be sufficient to support a conviction or even to send the case to the jury. *Corbett,* 106 Wn.2d at 578–79; *State v. Quillin,* 49 Wn. App. 155, 162, 741 P.2d 589 (1987), *review denied,* 109 Wn.2d 1027 (1988). If sufficient independent evidence has

been produced, the jury may consider the defendant's confession in determining whether the corpus delicti has been proven beyond a reasonable doubt. *State v. Meyer,* 37 Wn.2d 759, 763–64, 226 P.2d 204 (1951).

One of the reasons why the federal courts and a minority of states have abandoned the corpus delicti rule in favor of a "corroboration rule" is that

> a strict application of the *corpus delicti* rule is nearly impossible in those instances where the defendant has been charged with a crime that does not involve a tangible *corpus delicti* such as is present in homicide (the dead body), arson (the burned building) and robbery (missing property). Examples of crimes which involve no tangible injury that can be isolated as a *corpus delicti* include certain "attempt" crimes, conspiracy and income tax evasion.

*Parker,* at 232; *see also Smith v. United States,* 348 U.S. 147, 154–55, 99 L. Ed. 192, 75 S. Ct. 194 (1954).

While the Washington Supreme Court indicated its willingness to reconsider Washington's adherence to the corpus delicti rule in *Corbett,* 106 Wn.2d at 578, neither party here has briefed the issue or requested that we do so. Thus we are required to apply the corpus delicti rule to this offense.

■ Smith was charged with first degree attempted murder. To convict him of attempted murder, the State must prove that he: (1) actually intended to take a life; and (2) took a substantial step toward the commission of the act. RCW 9A.28.020(1); RCW 9A.32.030(1)(a). The corpus delicti of attempted murder is the substantial step taken to criminally end someone's life. *Cf. Corbett,* 106 Wn.2d at 578 (the statutory elements define the corpus delicti of a crime which does not produce a tangible injury).

Smith contends that without his confession there is no evidence that a substantial step had been taken to criminally end someone's life. He argues that the independent evidence is, at most, indicative of a plan to murder, and that because there is no independent evidence of a substantial step to commit the crime, the State failed to establish the corpus delicti of attempted murder. *See State v.*

*Goddard,* 74 Wn.2d 848, 851, 447 P.2d 180 (1968) (mere preparation to commit a crime is not sufficient); *State v. Gay,* 4 Wn. App. 834, 840, 486 P.2d 341, *review denied,* 79 Wn.2d 1006 (1971). In assessing the sufficiency of the proof of the corpus delicti independent of Smith's confessions, we assume the truth of the State's evidence and all reasonable inferences therefrom in a light most favorable to the State. *Corbett,* 106 Wn.2d at 571; *State v. Neslund,* 50 Wn. App. 531, 544, 749 P.2d 725, *review denied,* 110 Wn.2d 1025 (1988).

Here, the independent physical evidence and the police observations do not support an inference that a substantial step had been taken toward murdering someone. The police officers observed three men sitting in a car, drinking beer, in a closed park in violation of the city code. Smith had a knife strapped to his leg, but there is nothing in the record to suggest that it was illegal for him to carry this weapon in this manner. Smith also had 15 $100 bills in his pocket, but apart from his confession, there is nothing in the record to establish that the money was intended as compensation for an illegal act. The car contained multiple weapons, a bag of lime, and various implements, all of which may be legally possessed by the average citizen. The presence of all the weapons raises a reasonable concern, but apart from Smith's confession, there is no evidence that an attempted murder has been committed.

The State did not meet its burden of independently establishing the corpus delicti of attempted murder. Therefore, the trial court erred by admitting Smith's confession. Until such time as our Supreme Court may decide to adopt the corroboration rule, at least as to attempt crimes, convictions such as this cannot stand. Smith's conviction is reversed. The other issues need not be addressed.

COLEMAN, C.J., and PEKELIS, J., concur.

Reconsideration denied September 12, 1989.

Review granted at 113 Wn.2d 1034 (1990).