[No. 30364-7-II.   Division Two.   November 2, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. JEFFREY WAYNE POWERS, *Appellant*.

*John A. Hays*, for appellant.

*Ted H. Gathe, Vancouver City Attorney*, and *Rachel B. Mitchell, Assistant*, for respondent.

¶1 VAN DEREN, J. — Jeffrey Wayne Powers appeals his conviction of violating a domestic violence protection order.[1] He claims that the trial court erred in (1) admitting a 911 recording in light of *Crawford v. Washington*;[2] (2) admitting his statements before the State had established the corpus delicti of the offense; (3) denying his motion to dismiss for violation of the speedy trial rule; and (4) finding him guilty of a felony violation because the underlying judgments do not indicate on their face which statute he violated. He also claims that trial counsel failed to provide effective assistance. We hold that the 911 tape in this case was inadmissible because its purpose was to report Powers so authorities would apprehend him; it was not made under the stress of an immediate threat of harm, nor was Powers still present. Without the tape, the State did not establish the corpus delicti of the offense; therefore Powers' statements to the police were inadmissible under the corpus delicti rule. We reverse and remand and do not address the remaining issues.

## FACTS

¶2 At 7:08 P.M. on January 14, 2003, T.P. called 911 to report that Powers had been in her home in violation of a no-contact order against him. Vancouver Police Officer Brian Schaffer located Powers in a parking lot two-and-one-half to three blocks away. He handcuffed Powers, gave him

---

[1] A violation of RCW 26.50.110(5).

[2] *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

*Miranda*[3] warnings, which Powers waived, and discussed the allegations. He testified that Powers admitted visiting T.P., that he went there to talk about their relationship, that she did not know he was coming over, that he used to own the house and thought a no-contact order was unfair, that the judge should have ordered counseling instead of a no-contact order, and that someday he and T.P. would get married.

¶3 Powers was arrested for a gross misdemeanor violation of a no-contact order. Subsequently, the prosecutor learned that Powers had two previous no-contact-violation convictions, dismissed the district court charges and filed felony charges. The jury found him guilty as charged. The court imposed a standard range, 14-month sentence.

DISCUSSION

A. Admission of 911 Tape

¶4 Powers argues that the trial court's admission of the 911 tape of T.P's call violated his right of confrontation.

¶5 At the time of trial, Washington evidence law allowed the admission of excited utterances under an exception to the hearsay rule. ER 803(a)(2). Federal Sixth Amendment law allowed the admission of hearsay, even if the declarant was not subject to cross-examination, if the hearsay fell within a firmly rooted hearsay exception or was accompanied by particularized guaranties of trustworthiness. *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980); *see also White v. Illinois*, 502 U.S. 346, 356-57, 112 S. Ct. 736, 116 L. Ed. 2d 848 (1992); *Idaho v. Wright*, 497 U.S. 805, 820-21, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990); *Inadi v. United States*, 475 U.S. 387, 395-96, 106 S. Ct. 1121, 89 L. Ed. 2d 390 (1986).

■ ¶6 Following trial, the United States Supreme Court decided *Crawford v. Washington*, holding that a judge's ruling on the reliability and trustworthiness of a statement

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

by an unavailable witness cannot substitute for the defendant's constitutional right to confront the witness. *Crawford* holds that the Sixth Amendment prohibits the admission of testimonial evidence that is not subject to defense examination at trial. The only exception is when the witness is unavailable at trial and the defendant had a prior opportunity to examine the witness. *Crawford*, 541 U.S. at 53-54.

¶7 The question here is whether T.P.'s 911 call was "testimonial." If it was, it was inadmissible because T.P. did not testify at trial and had not previously been examined.

¶8 The Supreme Court in *Crawford* did not define "testimonial," expressly leaving that task for another day. 541 U.S. at 68. It did, however, provide some guidance. It held:

> Various formulations of this core class of "testimonial" statements exist: "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," Brief for Petitioner 23; "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," *White* v. *Illinois*, 502 U.S. 346, 365, 112 S. Ct. 736, 116 L. Ed. 2d 848 (1992) (THOMAS, J., joined by SCALIA, J., concurring in part and concurring in judgment); "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," Brief for National Association of Criminal Defense Lawyers et al. as *Amici Curiae* 3. These formulations all share a common nucleus and then define the Clause's coverage at various levels of abstraction around it. Regardless of the precise articulation, some statements qualify under any definition—for example, *ex parte* testimony at a preliminary hearing.
>
> Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard.

*Crawford*, 541 U.S. at 51-52.

¶9 Powers argues that T.P.'s statement to the 911 operator "falls squarely within the 'pretrial statements that declarants would reasonably expect to be used prosecutorially.'" Appellant's Supp. Br. at 10. He reasons that T.P. knew, as do most people, that a 911 operator is an immediate conduit to the police. And he reasons that T.P. "was aware of the no-contact order, as she was named in it, spoke of it on the telephone, and surely received a copy. Based on her experience, [T.P.] knew that her statements would result in Mr. Powers' arrest." Appellant's Suppl. Br. at 12 (citing Richard D. Friedman & Bridget McCormack, *Dial-In Testimony*, 150 U. Pa. L. Rev. 1171, 1199 (2002) ("[callers] know that by making the call they are practically ensuring that the other person will be arrested, and that a criminal prosecution will probably follow.").

¶10 Several recent cases provide guidance. *People v. Moscat*, 3 Misc. 3d 739, 777 N.Y.S.2d 875 (2004), involved a domestic violence victim's call to 911. The court found that the call was not testimonial. The court explained that (1) a victim, not the police, typically initiates such a call; (2) the call is not generated by the desire of the police to seek evidence but by the urgent desire of a citizen to be rescued from immediate peril; (3) the call can be seen as part of the criminal incident itself, rather than as part of the prosecution, because the calls are often made while an assault or homicide is still in progress; and (4) because there is no time for contemplation. ("Typically, a woman who calls 911 for help because she has just been stabbed or shot is not contemplating being a 'witness' in future legal proceedings; she is usually trying simply to save her own life." *Moscat*, 777 N.Y.S.2d at 878.)

¶11 *People v. Cortes*, 4 Misc. 3d 575, 781 N.Y.S.2d 401 (2004), involved a 911 recording of a call related to an attempted murder. On the 911 tape, the caller yells, "He's killing him, he's killing him, he's shooting him again," and hangs up with the comment, "I gotta hang up because people, people are gonna think I'm out calling the cops." *Cortes*, 781 N.Y.S.2d at 404. The caller was never identified and, thus, not available to testify.

¶12 The *Cortes* court held that the 911 recording was testimonial because (1) it was made to civilian police department employees; (2) the caller is questioned; and (3) the calls are routinely recorded. The court explained, "When a 911 call is made to report a crime and supply information about the circumstances and the people involved, the purpose of the information is for investigation, prosecution, and potential use at a judicial proceeding; it makes no difference what the caller believes." *Cortes*, 781 N.Y.S.2d at 415. "The 911 call in this case was for the purpose of invoking police action and the prosecutorial process. The only use of the statements was for government intervention including judicial proceedings." *Cortes*, 781 N.Y.S.2d at 416.

¶13 And in *Leavitt v. Arave*, 371 F.3d 663 (9th Cir. 2004), the reviewing court assessed the admission of a victim's statements to police the night before her murder. She had called dispatchers and talked to police while severely frightened by a prowler trying to break into her home. She was severely agitated and she named the defendant as the likely prowler because he had come to the home earlier in the day and she had refused him entry. The defendant claimed a violation of his rights under the confrontation clause of the Sixth Amendment. The court concluded that the statements on the tape were not affected by the confrontation clause because she sought help from the police to end a frightening intrusion into her home and were therefore not testimonial. They were admissible, even though hearsay, because the statements were excited utterances. *Leavitt*, 371 F.3d at 683; *see also State v. Wright*, 686 N.W.2d 295 (Minn. Ct. App. 2004) (victim's excited utterances to 911 operator were nontestimonial).

¶14 The dichotomy between a plea for help and testimonial statements in 911 calls was the subject of a law review article that foreshadowed the rule adopted in *Crawford*. In it, the authors concluded:

Now consider statements made in 911 calls and to responding police officers. A reasonable person knows she is speaking to

officialdom—either police officers or agents whose regular employment calls on them to pass information on to law enforcement, from whom it may go to the prosecutorial authorities. The caller's statements may therefore serve either or both of two primary objectives—to gain immediate official assistance in ending or relieving an exigent, perhaps dangerous, situation, and to provide information to aid investigation and possible prosecution related to that situation. In occasional cases, the first objective may dominate—the statement is little more than a cry for help—and such statements may be considered nontestimonial, at least to the extent that they are not offered to prove the truth of what they assert. But . . . these statements are often more detailed, providing significant information that the police do not need for immediate intervention but that may be useful to the criminal justice system. A reasonable person in the position of the declarant would realize that such information would likely be used in a criminal investigation or prosecution. Accordingly, such a statement should be considered testimonial, and the confrontation right should apply to it.

. . . .

Thus, if any significant time has passed since the events it describes, the statement is probably testimonial. When, as is often the case, the 911 call consists largely of a series of questions by the operator, and responses by the caller, concerning not only the current incident but the history of the relationship, the caller's statements should be considered testimonial. When O.J. Simpson called 911 to report an assault by his girlfriend, his call was testimonial, not a plea for urgent protection.

Richard D. Friedman & Bridget McCormack, *Dial-In Testimony*, 150 U. Pa. L. Rev. 1171, 1242-43 (2002) (footnotes omitted).

¶15 The facts here fall between *Moscat* and *Cortes* since the content of T.P.'s call is to report a crime (i.e., *Cortes*) but nowhere is it a call for help (i.e., *Moscat* and *Leavitt*).[4] The trial judge characterized her call as an excited utterance.

---

[4] Transcript of the relevant portions of the tape:

911 TAPE: . . . January 14, 2003 starting at 19:08. (telephone tones, phone ringing)

FEMALE CALLER: Hello? (Sounds distressed)

911 CRESA: Hi, this is 911, you got a call?

FEMALE CALLER: Jeff Powers.

911 CRESA: What?

FEMALE CALLER: Mm Jeff Powers. And he threatened to be over here. (inaudible) He's not supposed to be over here cause I have a No Contact Order.

911 CRESA: Okay, is he still there?

FEMALE CALLER: No, he went out the back door. (Inaudible)

911 CRESA: Okay, did he hit you or anything?

FEMALE CALLER: No.

911 CRESA: Is he driving?

FEMALE CALLER: No, he's walking.

911 CRESA: And what is your name? What is your name?

FEMALE CALLER: [T.P.]

911 CRESA: And what's the address there?

FEMALE CALLER: [gives address]. (She's crying and child crying in the background) And my son let him in the door when I was at work. And he went through my stuff.

911 CRESA: Which direction did he go?

FEMALE CALLER: I don't know like towards (inaudible) Village Vendor. (Screaming child in the background).

911 CRESA: Okay, he's a white male?

FEMALE CALLER: Yeah.

911 CRESA: About how tall is he?

FEMALE CALLER: I don't know, five ten.

911 CRESA: Heavy, slim, medium build?

FEMALE CALLER: What?

911 CRESA: Heavy, slim, medium build?

. . .

FEMALE CALLER: Mm hmm. (affirmative)

911 CRESA: Color hair?

FEMALE CALLER: Strawberry blonde, curly.

911 CRESA: Did he have a ball cap on or anything?

FEMALE CALLER: Yeah.

911 CRESA: A baseball cap? Or what kind?

FEMALE CALLER: Yeah.

911 CRESA: Color of shirt or jacket.

FEMALE CALLER: (Inaudible) brown.

911 CRESA: Wearing blue jeans or pants or what?

FEMALE CALLER: Blue jeans.

911 CRESA: Did he have any weapons on him?

But despite this characterization, based on indicia of reliability and trustworthiness, *Crawford* clearly rejects the admission of testimonial statements based on "the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.'" 541 U.S. at 61.

¶16 We reject the State's request for a bright-line rule admitting all 911 recordings because such a rule would likely result in the vice *Crawford* seeks to redress: A "capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude." 541 U.S. at 63. Instead, we hold that the trial court, on a case-by-case basis, can best assess the proposed admission of a 911 recording as testimonial or nontestimonial and whether the statement originates from interrogation. Despite the seriousness of Powers' alleged conduct, T.P.'s call was not "part of the criminal incident itself" or a request for help entitling the State to prove their case without affording Powers the opportunity to cross-examine T.P., the right *Crawford* protects. *Moscat*, 777 N.Y.S.2d at 880. Instead, the record

---

FEMALE CALLER: No.

911 CRESA: Has he been drinking or using drugs?

FEMALE CALLER: No.

911 CRESA: Okay. Do you have any idea where he's going?

FEMALE CALLER: No.

911 CRESA: And he has no vehicle.

FEMALE CALLER: No.

911 CRESA: Okay, does he live nearby?

FEMALE CALLER: No. He lives up in Seattle.

911 CRESA: Okay. All right we'll have . . .

FEMALE CALLER: (Inaudible) around here for a while I don't know.

911 CRESA: Well, somebody's gonna come out and take a report because it needs to be reported. Okay?

FEMALE CALLER: Yes.

911 CRESA: Okay thank you.

FEMALE CALLER: Mm hmm. (affirmative).

911 CRESA: Bye bye.

911 TAPE: That call concluded at nineteen eleven on January 14, 2003. That concludes this tape.

Report of Proceedings at 87-89.

shows that T.P. called 911 to report Power's violation of the existing protective order and described Powers to assist in his apprehension and prosecution, rather than to protect herself or her child from his return. Thus, under *Crawford*, her statements were "testimonial" and were erroneously admitted at trial when she became unavailable.

B. Corpus Delicti

¶17  Powers next argues that his confession was inadmissible because the State failed to prove the corpus delicti of the charged offense.

■■■ ¶18  The corpus delicti is proof that someone committed a crime. *State v. Ray*, 130 Wn.2d 673, 679, 926 P.2d 904 (1996); WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., CRIMINAL LAW § 1.4, at 18 (2d ed. 1986). If there is sufficient evidence to establish the corpus delicti with proof independent of the confession, the court may consider the confession as well. *City of Bremerton v. Corbett*, 106 Wn.2d 569, 574-75, 723 P.2d 1135 (1986) (quoting *State v. Meyer*, 37 Wn.2d 759, 763-64, 226 P.2d 204 (1951)). The independent evidence is sufficient if it prima facie establishes the corpus delicti; it need not be evidence beyond a reasonable doubt or even a preponderance of the proof. *Corbett*, 106 Wn.2d at 574-75. Prima facie in this context means evidence of sufficient circumstances to support a logical and reasonable inference of criminal activity. *State v. Smith*, 115 Wn.2d 775, 783, 801 P.2d 975 (1990) (citing *Corbett*, 106 Wn.2d at 579).

> "In assessing the sufficiency of the proof of the corpus delicti . . . , [the reviewing court must] assume the truth of the State's evidence and all reasonable inferences therefrom in a light most favorable to the State." *State v. Smith*, 54 Wn. App. at 473[5] (citing *Corbett*, [106 Wn. 2d] at 571; *State v. Neslund*, 50 Wn. App. 531, 544, 749 P.2d 725, *review denied*, 110 Wn.2d 1025 (1988)). Corpus delicti "can be established by either direct or circumstantial evidence." *State v. Lung*, 70 Wn.2d 365, 371, 423 P.2d 72 (1967).

*Smith*, 115 Wn.2d at 782 n.1.

---

[5] *State v. Smith*, 54 Wn. App. 467, 473, 774 P.2d 519 (1989).

¶19 Powers argues that, absent his admission and T.P.'s inadmissible statements, the State failed to prove that he had any contact with T.P. We agree. Since the 911 recording was the only evidence establishing the corpus delicti, without it Powers' statements were inadmissible. *See State v. Nieto*, 119 Wn. App. 157, 165, 79 P.3d 473 (2003) (absent prior inconsistent statement, defendant's confession was inadmissible and thus insufficient evidence supported the conviction).

¶20 We reverse and remand for further proceedings consistent with this opinion.

ARMSTRONG and HUNT, JJ., concur.