THIRD DIVISION        

FILED: January 5, 2005

No. 1-02-2358

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. ) No. 98 CR 10120

)

MARCUS WEST, ) Honorable

) Stuart E. Palmer, 

Defendant-Appellant. ) Judge Presiding.

JUSTICE HOFFMAN delivered the opinion of the court:

Following a jury trial, the defendant, Marcus West, was convicted of five counts of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(4) (West 2002)), and one count each of aggravated vehicular hijacking (720 ILCS 5/18-4(a)(3) (West 2002)), armed robbery (720 ILCS 5/18-2(a) (West 2002)), and kidnaping (720 ILCS 5/10-1(a)(1) (West 2002)).  He was sentenced to consecutive terms of 30 years' imprisonment on three of the aggravated criminal sexual assault convictions and the armed robbery conviction, concurrent terms of 30 years' imprisonment for the remaining aggravated criminal 
sexual assault and aggravated vehicular hijacking convictions, and a concurrent term of 7 years' imprisonment for the kidnaping conviction.
 
 On appeal, the defendant argues that the admission at trial of numerous out-of-court testimonial statements made by the victim violated his sixth amendment right of confrontation (U.S. Const., amend. VI), and that the trial court erred in admitting certain testimony at his sentencing hearing.  Alternatively, the defendant argues that several of the victim's statements were improperly admitted under the spontaneous declaration exception to the hearsay rule.  For the reasons which follow, we reverse and remand for a new trial.

In the evening of March 19, 1998, the victim, M.M., was operating her cab when two male passengers, one of whom was armed with a gun, kidnaped, robbed, and sexually assaulted her.  The defendant was arrested while driving M.M.'s cab shortly thereafter and charged, along with co-defendant Marvin Yates, with numerous counts of aggravated criminal sexual assault, aggravated kidnaping, kidnaping, attempted murder, armed robbery and aggravated vehicular hijacking.  

Prior to trial, the State filed a motion 
in limine
 seeking a ruling on the admissibility of several statements made by M.M. to: Dorothy Jackson, a woman from whom she received help immediately following the assault; a treating nurse and doctor; and three police officers.  The motion further stated that M.M. was unavailable to testify at trial because she was murdered on May 14, 1998.  The State also sought to introduce a tape recording of the 911 call made after the assault.  The defendant responded with a motion 
in limine
 which sought to exclude M.M.'s out-of-court statements as hearsay.  Following a hearing, the trial court found
 the statements admissible under the spontaneous declaration and statement to medical personal for purposes of medical treatment (725 ILCS 5/115-13 (West 2002)) exceptions to the hearsay rule.  

The matter then proceeded to trial, during which the State presented the following evidence.  Jackson testified that, on March 19, 1998, she was in her house at 7058 South Throop Street when she heard her doorbell ring.  As she approached the front door, Jackson heard a woman cry out, "Help me, I've been raped."  Jackson opened the door, helped the woman inside and, as she was trying to calm her, asked what happened.  The woman replied that she was raped by two, possibly six men, in two separate locations, and that the men had taken her vehicle, driver's license, purse, and jewelry.  The woman also told Jackson that she was a cab driver, and gave a description of her vehicle.  

Jackson then placed a call to a 911 dispatcher and relayed the information she had just learned.  Jackson stated that, during the call, she would ask the woman questions posed by the dispatcher, and provide the dispatcher with the woman's answers.  

The State then introduced into evidence a tape recording and transcript of the 911 call.  During the call, which was played for the jury, the dispatcher is heard posing numerous questions to Jackson.  These questions began with inquiries into what was wrong, whether M.M. was in need of an ambulance, where she was located, and what her age was.  The dispatcher then asked a series of questions relating to M.M.'s vehicle and the direction in which the assailants went "in order to get the police over there to help."  M.M. can be heard on the recording answering some of the dispatcher's questions and stating that her assailants took several items of her personal property.

Chicago police officer LaSandra Harrell testified that, on March 19, 1998, she responded to a "call for help" at 7058 South Throop Street where she found M.M. "balled up like a little child."  The officer approached M.M. who told her that she had been raped at gun point several times by four men.  She also told Officer Harrell that the main assailant was wearing green pants, and that he had taken her red 1993 Pontiac Grand Am.  The officer relayed this information to her partner who immediately sent a message over the police radio containing the information provided by M.M.

Officer Harrell stated that she followed M.M. to the hospital where she began to question her about the incident.  In response to the officer's questions, M.M. stated that she received instructions to pick up two men and drive them to the 5700 block of South Maplewood Avenue.  After completing the drive and requesting her fare, one of the men (first offender), who was wearing green pants, put a gun to the base of her neck and took her coin purse, necklace, watch, and earrings.  The first offender then forced her to perform oral sex on him and the other man (second offender) in the vehicle before he drove to a store where the second offender purchased a box of condoms.  M.M. told the officer that she was then driven to an abandoned garage where both men had vaginal sex with her.  The first offender then drove to another garage where the two men, and another man who had been picked up along the way, had vaginal sex with her.  Following this assault, the men took her driver's license, and the first offender threatened that he would kill her and her family if she told anyone what happened.  She was eventually able to escape and run to a house for help. 

Chicago police officer Kevin White testified that, on March 19, 1998, at approximately 11:24 p.m., he observed a red Pontiac Grand Am illegally pass his undercover vehicle and drive through a red light.  The officer pursued the vehicle for several blocks, eventually arresting the driver of the vehicle after engaging in a foot chase.  The driver, who Officer White identified in court as the defendant, was wearing green pants and a white t-shirt that appeared to have blood stains on it.  The Grand Am was subsequently identified as being registered to M.M., and a custodial search of the defendant revealed a watch, necklace, and one earring.  

Susanna Sibug, an emergency room nurse, testified that she spoke to M.M. in the hospital shortly before midnight on March 19, 1998.  Sibug stated that M.M. told her that she had responded to a call to pick up some passengers who had specifically requested a female cab driver.  M.M. told Sibug that, after driving the passengers to their destination, they began to hit her and threaten her with a gun.  M.M. then recounted for Sibug the ways in which she was physically and sexually assaulted and described her assailants as black males in their teens or early twenties. 

Dr. Andrew Labrador testified that he was M.M.'s emergency room physician.  The doctor stated that he initiated his examination of M.M. by asking her what happened.  She responded with a description of how she had obtained her injuries and how she had been sexually assaulted.  Dr. Labrador performed a physical examination of M.M. and, with Sibug's assistance, prepared a sexual assault kit.  The doctor testified that his examination revealed numerous abrasions to M.M.'s face, right hand, hips, knees, back, and chest.

The State also presented the testimony of Officer Patricia Kane and Detective Daniel McInerney.  The majority of their testimony concerned the various statements M.M. provided in response to their independent questioning of her at the hospital.  These statements included descriptions of the defendant and the nature of his actions, and were substantially similar, although more detailed, than the information M.M. provided Officer Harrell at the hospital.

Finally, the State introduced physical and genetic evidence obtained from M.M., her vehicle, the defendant, and the two areas where the assaults took place.  This evidence showed that DNA profiles from M.M.'s vaginal swab and the semen stains found on her panties and leggings matched the DNA profile of the defendant.  Further, a DNA profile taken from a blood sample found on the shirt the defendant was wearing at the time of his arrest matched M.M.'s DNA profile.

Following deliberations, the jury returned guilty verdicts on five counts of 
aggravated criminal sexual assault, and one count each of aggravated vehicular hijacking, armed robbery, and kidnaping.  The court entered judgment on the verdicts and continued the matter for sentencing.  At the sentencing hearing, the State presented in aggravation
 evidence of the defendant's prior bad acts.  These included statements by a correctional officer who had investigated the defendant's alleged involvement in two fights while he was awaiting trial and testimony by a Chicago police detective who had investigated the defendant's alleged involvement in the assault of a 13-year-old girl in 1995.  Neither the officer nor the detective had witnessed the events to which they testified.  Following arguments, the court sentenced the defendant to consecutive terms of 30 years' imprisonment on three of the aggravated criminal sexual assault convictions and the armed robbery conviction, concurrent terms of 30 years' imprisonment for the remaining aggravated criminal 
sexual assault and aggravated vehicular hijacking convictions, and a concurrent term of 7 years' imprisonment for the kidnaping conviction.  The defendant filed motions for a new trial and reconsideration of his sentence.  Both motions were denied, and this appeal followed.

Citing 
Crawford v. Washington
, 541 U.S. 36, 158 L.Ed.2d 177, 124 S.Ct. 1354 (2004), the defendant contends
 that M.M.'s statements to Jackson, the 911 operator, Officers Harrell and Kane, Detective McInerney, Sibug, and Dr. Labrador
 constitute testimonial evidence.  He argues that their admission at trial, in the absence of an opportunity to cross-examine M.M., violated his constitutional  right of confrontation. 

The sixth amendment's confrontation clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him."  U.S. Const., amend. VI. 
 
Until recently, an unavailable witness's out-of-court statement could satisfy sixth amendment scrutiny, and be admitted at trial, so long as it had an adequate indicia of reliability.  
Ohio v. Roberts
, 448 U.S. 56, 66, 65 L.Ed.2d 597, 100 S.Ct. 2531 (1980).  In 
Crawford
, the Supreme Court abandoned this reliability framework in relation to testimonial statements.  In its place, the Court held that the confrontation clause bars out-of-court testimonial statements unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant, regardless of whether the court finds adequate indicia of reliability.  
Crawford
, 541 U.S. at --, 124 S.Ct. at 1374.  Although the 
Crawford
 Court left "for another day any effort to spell out a comprehensive definition of 'testimonial'" (
Crawford
, 541 U.S. at --, 124 S.Ct. at 1374),
 it did provide several examples of what it termed "[v]arious formulations of [the] core class of 'testimonial' statements" (
Crawford
, 541 U.S. at --, 124 S.Ct. at 1364).
  These include: (1) "'
ex parte
 in-court testimony or its functional equivalent– that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially'"; (2) "'extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony or confessions'"; (3) "'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial'"; and (4) "[s]tatements taken by police officers in the course of interrogations."  
Crawford
, 541 U.S. at --, 124 S.Ct. at 1364. 

The defendant first contends that M.M.'s statements to the three officers at the hospital are testimonial in nature because they were taken for law enforcement purposes, and that they should not have been admitted at his trial.  We agree.  

Although 
Crawford
 failed to precisely define testimonial evidence, the Court was clear in at least one respect: statements taken by police officers in the course of an interrogation are considered testimonial "under even a narrow standard."  
Crawford
, 541 U.S. at --, 124 S.Ct. at 1364.  Moreover, according to 
Crawford
, the term "interrogation" is to be viewed in a colloquial, rather than a technical sense.  
Crawford
, 541 U.S. at --, 124 S.Ct. at 1366 n.4.  

In this case, at the time M.M. was questioned at the hospital, the defendant was already in custody and the officers possessed some knowledge of his alleged involvement in the assault.  Their questioning of M.M. was conducted for the purpose of further investigating the defendant's involvement and to gather evidence for use in a criminal prosecution.  Accordingly, the officers asked specific, purposeful questions and were in turn provided with detailed descriptions of the events that transpired and the defendant's involvement.  These investigative, evidence-producing actions bore statements which, if used to convict the defendant, would implicate the central concerns underlying the confrontation clause.  
Crawford
, 541 U.S. at --, 124 S.Ct. at 1365.  Therefore, we find that the statements M.M. provided at the hospital to Officers Harrell and Kane and Detective McInerney are testimonial in nature.  Because M.M. was unavailable to testify at trial and the defendant did not have a prior opportunity to cross-examine her, these statements were inadmissible.

We turn now to the statement M.M. provided to Officer Harrell at Jackson's house.  Unlike the statements elicited by the officers at the hospital, the statement at issue here was obtained in response to the officer's preliminary task of attending to the medical concerns of a victim shortly after the commission of an offense.  We believe that this distinction is controlling in our determination of whether the statement is testimonial in nature.

Although there has been no Illinois case on point, we are persuaded by the reasoning of the court in 
People v. Kilday
, 20 Cal. Rptr. 3d
 161, 123 Cal. App. 4th
 406 (Cal. Ct. App. 2004).  In 
Kilday
, the defendant raised 
Crawford
 challenges to three separate statements the victim made to several police officers, each of which described the nature of an alleged assault and implicated the defendant as the assailant.  Two of these statements, which were made after the victim's safety and medical concerns were attended to and for the purpose of obtaining evidence in anticipation of a potential criminal prosecution, were found to constitute testimonial evidence.  However, a third statement, which was provided at the scene of the alleged crime to two responding officers upon their arrival, was found not to be testimonial in nature.  In reaching this decision, the 
Kilday
 court first noted that when the officers encountered the victim she was frightened and upset, the area was unsecured, and the situation they were entering was uncertain.  Further, the responding officers were unaware of the nature of the crime, the identity of the alleged assailant, or the medical concerns of the victim.  Based on this evidence, the
 court concluded:

"[The responding officers] were not producing evidence in anticipation of a potential criminal prosecution in eliciting basic facts from [the victim] about the nature and cause of her injuries.  In reaching this conclusion, we do not adopt a blanket rule that all statements obtained from victims or witnesses by police officers responding to emergency calls are necessarily nontestimonial.  The determination [of] whether a statement obtained through police questioning in the field is testimonial requires a case-specific, fact-based inquiry.  Under 
Crawford
, this inquiry must center around whether the officer involved was acting in an investigative capacity to produce evidence in anticipation of a potential criminal prosecution.  Here, where the responding officers were still principally in the process of accomplishing the preliminary tasks of securing and assessing the scene, we conclude that the statement elicited is not testimonial."  
Kilday
, 20 Cal. Rptr. 3d at 173-74.

In this case, we similarly find that M.M.'s statement to Officer Harrell at Jackson's house is not testimonial in nature.  When the officer arrived at Jackson's house, she did so in response to a "call for help."  Upon arriving, Officer Harrell encountered M.M., who she described as crying and having a "look of fear on her."  As in 
Kilday
, there is no indication in the record here that Officer Harrell was aware of the nature of the crime, the identity of the alleged assailant, or the medical concerns of the victim.  The questions posed by the officer were preliminary in nature and for the purpose of attending to M.M.'s medical concerns
, not for the purpose of producing evidence in anticipation of a potential criminal prosecution.  Therefore, we find that M.M.'s responses are not testimonial in nature, and that they were properly admitted.  

The defendant next contends that all of the statements M.M. made to Sibug and Dr. Labrador are testimonial in nature because they were obtained in anticipation of a potential criminal prosecution.  A similar argument was made to this court in 
In re T.T.
, 351 Ill. App. 3d 976, 815 N.E.2d 789 (2004).  

In 
In re T.T.
, the respondent raised a 
Crawford
 challenge to the admission at trial of the victim's hearsay statements to a doctor who had examined her.  We held that the victim's statements describing the cause of her symptoms or pain were not testimonial in nature, while those statements to the doctor identifying the respondent as the assailant were testimonial in nature.  
In re T.T.
, 351 Ill. App. 3d at 992.  In so finding, we reasoned that:

"[A] victim's statements to medical personnel regarding 'descriptions of the cause of symptom, pain or sensations, or the inception or general character of the cause or external source thereof' [citation], are not testimonial in nature where such statements do not accuse or identify the perpetrator of the assault. [The victim's] statements explaining how she was penetrated, the pain, and the offender's use of a lubricant are relevant in assessing how [the doctor] reached her opinion that [the victim] sustained sexual abuse and are in accord with the statutory hearsay exception for statements, made by a patient with a selfish interest in treatment, for the purpose of medical diagnosis and treatment.  Those statements were not accusatory against respondent at the time made and, thus, do not trigger enhanced protection under the confrontation clause."  
In re T.T.
, 351 Ill. App. 3d at 993.

We find no reason to deviate from the holding in 
In re T.T.
, and similarly find that M.M.'s statements to Sibug and Dr. Labrador regarding the nature of the alleged attack, and the cause of her symptoms and pain remain governed by the medical treatment exception to the hearsay rule (725 ILCS 5/115-13 (West 2002)), and that they were properly admitted at trial.  The remainder of 
M.M.'s statements to Sibug and Dr. Labrador concerning fault or identity, however, "implicate the core concerns protected by the confrontation clause."  
In re T.T.
, 351 Ill. App. 3d at 993.  Thus, we find that those portions of M.M.'s statements to Sibug and Dr. Labrador which identify the defendant as her assailant are testimonial in nature, and their admission at trial violated the defendant's right of confrontation.

The defendant next contends that the trial court erred in admitting M.M.'s statements to the 911 dispatcher.  The defendant claims that the dispatcher was seeking information fashioned to apprehend and prosecute the alleged offenders by posing questions meant to ascertain their physical descriptions, the type of vehicle they fled in, and the direction of their flight
.  According to the defendant, the dispatcher was interrogating M.M. and, therefore, her responses are testimonial in nature.   

Once again, although there are no Illinois cases on point, we are guided by several decisions from other jurisdictions.  In 
People v. Moscat
, 777 N.Y.S.2d 875, 879, 3 Misc.3d 739 (N.Y. Crim. Ct. 2004), the court held that the victim's statement on a 911 recording was not testimonial in nature because her call for help was "essentially different in nature than the 'testimonial' materials that 
Crawford
 tells us the Confrontation Clause was designed to exclude."  In so finding, the court stated that the typically "hurried and panicked" conversation between an injured victim and a dispatcher is simply not equivalent to the formal pretrial examinations to which the confrontation clause was directed.  Although those who provide a formal statement, deposition, or affidavit are conscious that they are bearing witness, and that their statement may be used in a potential criminal proceeding, an individual who has just been injured "is not contemplating being a 'witness' in future legal proceedings; she is usually trying simply to save her own life."  
Moscat
, 777 N.Y.S.2d at 879-80.  Therefore, the court concluded, because the caller is not "bearing witness," a 911 call is not testimonial in nature, and it may be received in evidence without offending the confrontation clause.  
Moscat
, 777 N.Y.S.2d at 880
.  See also 
People v. Caudillo
, 19 Cal. Rptr. 3d 574, 122 Cal. App. 4th
 1417 (Cal. Ct. App. 2004) (holding that statements contained on a 911 tape did not constitute testimonial evidence). 

In reaching a different conclusion, the court in 
People v. Cortes
, 781 N.Y.S.2d 401, 407, 4 Misc.3d 575 (N.Y. Sup. Ct. 2004), held that the questions posed by the 911 dispatcher fell within 
Crawford
's definition of interrogation and, thus, produced a statement which was testimonial in nature.  As the court explained:

"When a 911 call is made to report a crime and supply information about the circumstances and the people involved, the purpose of the information is for investigation, prosecution, and potential use at a judicial proceeding; it makes no difference what the caller believes. *** 

***

             *** [A]n objective reasonable person knows that when he or she reports a crime the statement will be used in an investigation and at proceedings relating to a prosecution."  
Cortes
, 781 N.Y.S.2d at 415.

The 
Cortes
 court concluded that the purpose of the 911 call at issue was to invoke "police action and the prosecutorial process" and, therefore, the defendant was entitled to confront the declarant.  
Cortes
, 781 N.Y.S.2d at 416. 

Finally, in 
People v. Powers
, 99 P.3d 1262 (Wash. Ct. App. 2004), the court, after examining, 
inter
 
alia
, 
Moscat
 and 
Cortes
, found that the 911 recording at issue was testimonial in nature.  The court first rejected a bright line rule that all 911 recordings were nontestimonial, opting instead to employ a case-by-case analysis into whether the statements contained on the recording originated from interrogation.  The court then examined the call and found that it was neither "part of the criminal incident itself," nor a request for help.  Rather, the court found that the call was made for the purpose of reporting a criminal violation, and to assist in the apprehension and prosecution of the offender.  Accordingly, the statements contained on the 911 recording were held to be testimonial in nature.  
Powers
, 99 P.3d at 1266.

We find 
Moscat
, 
Cortes
 and 
Powers
 helpful in several respects.  First, as in 
Powers
, we reject any bright line rule which would hold a 911 call testimonial or not testimonial in nature.  Rather, we believe that a court should determine, on a case-by-case basis, whether the statement made to the 911 dispatcher was: (1) volunteered for the purpose of initiating police action or criminal prosecution; or (2) provided in response to an interrogation, the purpose of which was to gather evidence for use in a criminal prosecution
.  In the first instance, the statement is testimonial in nature because an objective individual would reasonably believe that when he or she reports a crime they are "bearing witness" and that their statement will be available for use at future criminal proceedings.  
Cortes
, 781 N.Y.S.2d at 415-16
.
  In the later case, the statement is testimonial in nature because it is the product of evidence-producing questions, the responses to which, if used to convict a defendant, would implicate the central concerns underlying the confrontation clause.  
Crawford
, 541 U.S. at --, 124 S.Ct. at 1365.
  
Second, in performing this analysis, a court should examine a caller's statement in the same manner as it would a victim's statement to a treating medical professional.  Accordingly, statements which are made "to gain immediate official assistance in ending or relieving an exigent, perhaps dangerous, situation" (Richard Friedman, Bridget McCormack, 
Dial-In Testimony
, 150 
U. Pa. L. Rev
. 1171, 1242 (2002)) are comparable to those made to medical personnel regarding "descriptions of the cause of symptom, pain or sensations, or the inception or general character of the cause or external source thereof" (725 ILCS 5/115-13 (West 2002)) and, as such, are not testimonial in nature.  However, statements volunteered for the purpose of "invoking police action and the prosecutorial process" (
Cortes
, 781 N.Y.S.2d at 416), or responses to questions posed for the purpose of collecting information "useful to the criminal justice system," (150 
U. Pa. L. Rev
. at 1242) are testimonial in nature.

Applying these principles to the matter at hand, we find that those statements made to the 911 dispatcher concerning the nature of the alleged attack, M.M.'s medical needs, and her age and location are not testimonial in nature, and were properly admitted at trial.  These statements were given immediately after M.M. was brutally assaulted and in a state of shock for the purpose of requesting medical and police assistance.  Further, the dispatcher's questions concerning what was wrong, whether M.M. was in need of an ambulance, what her age was, and where she was located were posed in order to gather information about the situation and to secure medical attention for her, not to produce evidence in anticipation of a potential criminal prosecution
.  However, those statements made by M.M. which described her vehicle, the direction in which her assailants fled, and the items of personal property they took are testimonial in nature.  These statements were made in response to questions posed by the dispatcher for the stated purpose of involving the police.  As such, M.M.'s responses are comparable to those obtained through official questioning for the purpose of producing evidence in anticipation of a potential criminal proceeding, and their use at trial to secure the defendant's conviction implicates the central concerns underlying the confrontation clause.  
Crawford
, 541 U.S. at --, 124 S.Ct. at 1365.  
Accordingly, we find that the portion of M.M.'s statement to the dispatcher which described her vehicle, the direction in which her assailants fled, and the items of personal property they took are testimonial in nature
, and their admission at trial violated the defendant's right of confrontation.

Finally, the defendant contends that the statements M.M. made to Jackson, "with the exception of  the immediate outcry of 'Help me, I've been raped'" are testimonial in nature.  The defendant argues that M.M.'s statements to Jackson were "indirectly made to a police or government official."  
We disagree.

Here, the defendant attempts to characterize Jackson as an agent of the government
 because she acted as an intermediary between M.M. and the 911 dispatcher.  We believe, however, that Jackson was no more than a concerned citizen, and that her actions in relaying information to the 911 dispatcher do not transform her into an agent of the government.  
When M.M. appeared at Jackson's door, she was crying for help.  Jackson took M.M. into her home and asked her what had happened.  The purpose behind Jackson's questions was clearly altruistic and, as such, we fail to see how she was acting as a governmental officer seeking evidence in anticipation of a potential criminal prosecution.  Thus, we find that M.M.'s statements to Jackson do not implicate the central concerns underlying the confrontation clause and, accordingly, are not testimonial in nature.  They were therefore properly admitted at the defendant's trial.

Having found several violations of the defendant's right of confrontation, we must now determine if they were harmless beyond a reasonable doubt.  
Chapman v. California
, 386 U.S. 18, 17 L.Ed.2d 705, 87 S.Ct. 824 (1967).  In 
People v. Wilkerson
, 87 Ill. 2d 151, 156, 429 N.E.2d 526 (1981), our supreme court set forth three approaches for measuring harmless error
: (1) focusing on the error to determine whether it might have contributed to the conviction; (2) examining the other evidence in the case to see if overwhelming evidence supports the conviction; and (3) determining whether the evidence is cumulative or merely duplicates properly admitted evidence.  Here, Officers Harrell and Kane and Detective McInerney testified in great detail concerning the numerous statements M.M. made at the hospital following her attack.  These statements described the nature of her ordeal, identified the defendant as one of her assailants, and detailed the acts he performed.  Although the physical evidence, testimony of Jackson, and M.M.'s statements to Officer Harrell at Jackson's house provided evidence of the defendant's involvement in the commission of the various offenses, M.M.'s statements to Officers Harrell and Kane and Detective McInerney at the hospital 
identified with the most specificity the acts the defendant performed.  We believe there is a reasonable probability that the admission of these statements contributed to the defendant's convictions.  Thus, we conclude that the confrontation clause errors in this case were not harmless beyond a reasonable doubt.  Accordingly, we reverse the defendant's convictions and sentences and remand the case to the circuit court for a new trial.  In so doing, we find that the evidence was sufficient to support the defendant's convictions, so that double jeopardy considerations do not prevent retrial.  
People v. Olivera
, 164 Ill. 2d 382, 393, 647 N.E.2d 926 (1995).  Due to our resolution of this issue, we find it unnecessary to address the defendant's alternative hearsay argument.  However, we shall address the defendant's sentencing issue as it is likely to arise on retrial.

The defendant argues that the trial court erred by allowing two State witnesses to present hearsay evidence of several prior bad acts.  We disagree.

A trial court is not bound by the same rules of evidence at a sentencing hearing as it is during the guilt phase of a trial.  
People v. Bilski
, 333 Ill. App. 3d 808, 818, 776 N.E.2d 882 (2002).  For example, hearsay evidence is admissible so long as it is relevant and reliable.  
Bilski
, 333 Ill. App. 3d at 818.  

In this case, the State presented
 the testimony of a corrections officer and a Chicago police detective who had conducted investigations into the defendant's alleged commission of several criminal acts.  The corrections officer described the defendant's alleged involvement in two fights which occurred during his pre-trial detention.  The officers' testimony was based on statements he received during his investigation from other officers and the victim of one of the fights.  The detective testified concerning an investigation she conducted in 1995 into the alleged assault of a 13-year-old girl.  The detective stated that the alleged victim told her the defendant had used a screwdriver to stab her and tear off her clothing, and that after the defendant was arrested he struck his arresting officers and escaped. 

We find that evidence of the defendant's prior bad acts was properly admitted.  First, the evidence is relevant to the sentencing phase because it related to the defendant's criminal history and provided insight into his character.  
People v. Ivy
, 313 Ill. App. 3d 1011, 1019, 730 N.E.2d 628 (2000).  Further, the evidence is reliable because it was based on an official investigation into the defendant's alleged involvement in a criminal offense.  
People v. Morgan
, 112 Ill. 2d 111, 144, 492 N.E.2d 1303 (1986).  
Therefore, we find that the testimony of the corrections officer and detective presented at the defendant's sentencing hearing was properly admitted.

For the foregoing reasons, we reverse the defendant's convictions and sentences 
and remand the cause to the circuit court for a new trial.  

Reversed and remanded.

KARNEZIS, P.J., and SOUTH, J., concur.