2022 IL App (2d) 200246-U
No. 2-20-0246
Order filed January 18, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 12-CF-698 |
| PAUL ANTHONY MATHIS, | ) ) | Honorable Joseph G. McGraw, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Jorgensen and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   In defendant's prosecution for sex offenses against his nieces, the trial court did not err in giving the State's limiting instruction on other-crimes evidence admitted under section 115-7.3 of the Code of Criminal Procedure of 1963; contrary to defendant's argument, the instruction did not prejudice him but, rather, ameliorated potential prejudice from the other-crimes evidence. Also, defendant's sentence of 30 years' imprisonment for touching his niece's leg for sexual gratification was not excessive given the severity of the offense, defendant's extensive criminal history, and his poor prospects for rehabilitation.

¶ 2    Defendant, Paul Anthony Mathis, appeals his conviction of aggravated criminal sexual

abuse (720 ILCS 5/11-1.60(c)(1)(i) (West 2012)). He contends that it was plain error for the trial

court to give a limiting instruction regarding other-crimes evidence and that his 30-year sentence of incarceration was excessive. We affirm.

¶ 3                                   I. BACKGROUND

¶ 4     On April 11, 2012, defendant was indicted on three counts of aggravated criminal sexual abuse. Count I alleged that, between July 1, 2011, and February 6, 2012, defendant touched the leg of Ki.M for sexual gratification. Count II alleged that, between the same dates, defendant touched the buttocks of Ki.M for sexual gratification. Count III alleged that, on February 6, 2012, defendant touched the leg of Kr.M for sexual gratification. Kr.M was Ki.M's twin sister. Each count alleged that the contact occurred when defendant was at least 17 years of age and the victim was under 13 years of age. The State later filed two superseding indictments, each alleging that defendant was subject to mandatory Class X sentencing because he was previously convicted of two Class 2 or greater felonies.

¶ 5     When the charges were filed, defendant had two pending cases for failure to report as a sex offender. The State elected to proceed first on one of those cases, No. 12 CF 396. During pretrial proceedings, defendant's appointed counsel moved multiple times to withdraw, stating an inability to communicate with defendant or gain his cooperation. The court eventually allowed counsel to withdraw and appointed conflict counsel. Conflict counsel later asked to withdraw on the same grounds as prior counsel. Defendant then requested to remove counsel and proceed *pro se*. The court granted defendant's request. After a jury trial, defendant was found guilty. Before sentencing, the court granted defendant's request to reappoint counsel.

¶ 6     After sentencing in case No. 12 CF 396, the State proceeded in the present case. After January 2, 2014, defendant refused to attend nearly all proceedings, including his trial and sentencing hearing. After delays relating to defendant's fitness to stand trial, the State in October

- 2 -

2018 filed a superseding indictment bringing three additional counts. Ultimately, the State proceeded to trial on three counts: one count of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2012)), alleging that, on February 6, 2012, defendant placed his finger in Kr.M's vagina, and two counts of aggravated criminal sexual abuse, alleging that, on the same date, defendant touched Kr.M's vagina with his hand for sexual gratification and touched Kr.M's leg for sexual gratification. Defendant was uncooperative and refused to participate at his arraignment. At another proceeding, he constantly interrupted the court's admonishments and swore at the attorneys.

¶ 7 Before trial, the State moved under section 115-7.3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7.3 (West 2018)) to admit evidence of defendant's sexual acts against Ki.M and Kr.M on dates other than February 6, 2012, as showing his propensity to commit sex offenses. The court granted the motion.

¶ 8 At the jury trial, Kr.M testified that, in 2012, she was 11 years old and lived with Ki.M, her two brothers, her mother, her mother's then-husband, and defendant, who was her mother's brother. Defendant moved into the house around Father's Day 2011. Kr.M and Ki.M slept in the same bed in a second-floor loft.

¶ 9 On February 6, 2012, Kr.M was asleep when she felt someone rubbing her inner left thigh. She ignored it and went back to sleep. She woke back up when she felt "something else," "as if something was trying to enter" her vagina. Kr.M opened her eyes and saw defendant lying with his torso on the edge of the bed with his hand touching her. Kr.M's pants were on the floor. Kr.M started crying, and Ki.M woke up and asked what was happening. Defendant begged the girls not to tell their mother.

¶ 10    Defendant eventually left the room, and Kr.M and Ki.M went to their mother's room and told her that defendant had touched Kr.M's thigh.  The police came, and Kr.M talked to one of the responding officers.  A few days later, on February 15, 2012, Kr.M was interviewed at the Carrie Lynn Children's Center (CLC), a children's advocacy center, and said that defendant had touched her thigh.  Several years later, on September 26, 2018, Kr.M told an assistant state's attorney that defendant had touched her vagina.  Kr.M testified to additional sexual advances from defendant, stating that, at a family gathering on Father's Day 2011, defendant became "very hands on and touchy" with her.  At one point, defendant grabbed her hips from behind and "[g]rop[ed]" her.  Her mother saw it and yelled at defendant.

¶ 11    Ki.M testified that, in August 2011, she slept alone in the loft because Kr.M was staying at a friend's house.  She woke up to find defendant in bed with her with his hand inside her pants, touching her buttocks.  Ki.M jumped away from defendant, and he apologized and asked her not to tell her mother.  Ki.M told her mother about the incident.

¶ 12    Ki.M also testified that, for a period in the fall of 2011, she slept on the living room couch and took painkillers because of a sports injury.  Defendant always reminded her to take her pain medication, which made her drowsy.  During that time, she would typically wake up to find defendant hovering over her and touching her under her clothes.

¶ 13    Ki.M testified that, on February 6, 2012, she woke to find defendant next to the bed "on all fours" with his arm under the covers.  Ki.M saw Kr.M jump up and defendant move away from the bed.  Ki.M yelled at defendant to leave the room, and defendant asked them not to tell their mother.  Kr.M told Ki.M that defendant had touched her leg.  The girls woke their mother and told her that Kr.M had woken up to find defendant in bed with her and that defendant touched her thigh.

¶ 14     Marisol Tischman, who was the lead forensic interviewer at the CLC in 2012, testified that she interviewed Kr.M in February 2012.  A recording of the interview was played for the jury.  In the recorded interview, Kr.M said only that defendant touched her leg.

¶ 15     Detective John Eissens testified that he interviewed defendant at the police station on February 10, 2012.  Defendant initially told Eissens that Kr.M and Ki.M told him that a window was broken in their room.  He said that he went into the girls' room to check the window during the early morning hours of February 6, 2012.  He accidentally kicked the girls' bed and woke them.  Later, defendant told Eissens that he knelt on the floor and touched Kr.M's leg.  Defendant did not say why he did it.

¶ 16     During the jury instruction conference, the State tendered a modified version of Illinois Pattern Instruction, Criminal, No. 3.14 (approved Oct. 17, 2014) (hereinafter IPI Criminal 3.14).  The modified instruction read:

> "Evidence has been received that the defendant has been involved in conduct other than that charged in the indictment.
>
> This evidence has been received on the issues of the defendant's propensity to commit the crimes as well as the defendant's intent, motive and lack of mistake and may be considered by you only for that limited purpose.
>
> It is for you to determine whether the defendant was involved in that conduct and, if so, what weight should be given to this evidence on the issues of the defendant's propensity to commit the crimes as well as the defendant's intent, motive and lack of mistake."

¶ 17     The prosecutor noted that the State's motion *in limine* had asked that the other-crimes evidence be admitted to show propensity.  The prosecutor explained why it wanted the instruction

to specify additional purposes for the evidence, namely, to show intent, motive, and lack of mistake:

> "[T]he State is asking to argue the propensity not just as that he has a propensity to commit these crimes, but that this was not an accident that happened one time he touched [Kr.M's] leg. This is an ongoing thing that he is doing intentionally. It's not a mistake, so that is why I included intent, motive and lack of mistake."

When asked to make an offer of proof, the prosecutor argued:

> "[T]hese are multiple separate incidences. That both girls describe an incident of him coming up into their room in the early morning hours, in the dark, getting down next to their bed, and touching them while they are sleeping on their bodies in a similar way. That they also experienced him grabbing on them, on their hips, pulling them towards him. The Court has granted propensity, but I think that that also shows that this was intentional. The defendant made statements that, oh, [I] was just going into the room to fix an air conditioner, to look at a cracked window, that he just tapped on their leg, that he just touched their leg. And I think that the propensity and these multiple incidents goes to that. This was not a mistake. This was not an accident. These were intentional actions that he did."

¶ 18    Defense counsel objected to the instruction "[t]o preserve [his] objection to the other crimes evidence motion *in limine*." The court gave the instruction over counsel's objection. During closing arguments, the State argued without objection that defendant's actions were intentional and not a mistake.

¶ 19    The jury found defendant guilty on the count of aggravated criminal sexual abuse alleging that defendant touched Kr.M's leg for sexual gratification. The jury found him not guilty on the

other counts. Defendant moved for a new trial, arguing that the court erred by allowing the State to introduce other-crimes evidence to prove his propensity to commit crimes. Defendant did not argue that the judge erred by giving the jury the State's modified version of IPI Criminal 3.14. The motion was denied.

¶ 20    A sentencing hearing was held on February 21, 2020. The presentence investigation report (PSI) showed that defendant had a substantial criminal history with at least seven prior felony convictions between 1978 and 2010, including two Class 2 convictions for burglary, a Class X conviction for aggravated criminal sexual assault, and a Class X conviction for home invasion. Other offenses included theft, criminal trespass to vehicle, unlawful use of a weapon, harassing and obscene communication, attempted burglary, and failure to register as a sex offender. He had a prior probation revocation and unpaid court fines. The PSI also noted a history of mental health problems and addiction to drugs and alcohol. Defendant was previously employed and had earned his GED.

¶ 21    The parties agreed that defendant's criminal history subjected him to mandatory Class X sentencing. Defendant refused to be interviewed for the PSI and refused to attend sentencing. The State requested "as high of a sentence as the Court will allow." Defense counsel requested "something substantially less than a maximum sentence."

¶ 22    The court discussed the aggravating and mitigating factors at length and stated that it had considered the evidence at trial, victim impact statements, defendant's rehabilitative potential, and the PSI. The court stated that it would not consider defendant's refusal to attend court but would consider his behavior toward the court and counsel, as it "shed some light on his character and attitudes." The court stated that it would not consider the offenses for which defendant was acquitted. It found the conduct of which defendant was convicted "extremely evil" and noted the

psychological harm he caused his niece. Defendant abused her trust and the trust of her mother, defendant's sister. The court observed that defendant had been a "defiant lawbreaker his entire adult life, committing crimes of violence and crimes of a sexual nature." As a result, the court also found that defendant was likely to commit other offenses and had "extremely low to nonexistent" rehabilitative potential. The court further stated that deterrence was an important consideration. The court recognized mitigating factors such as defendant's earning a GED, his prior employment, and his alcohol and drug abuse, but these "[did] not in total or separately alter the Court's decision in terms of the weight [it's] giving to them." The court reiterated that it was sentencing defendant only on the charge of which he was convicted. The court imposed a sentence of 30 years' incarceration. Defendant moved to reconsider the sentence, arguing that it was excessive. The court denied the motion, and defendant appeals.

¶ 23                                    II. ANALYSIS

¶ 24     Defendant first contends that the trial court abused its discretion when it gave the State's instruction on other-crimes evidence. He argues that, because the evidence was admissible under section 115-7.3 for any relevant purpose, the instruction was unnecessary and placed undue emphasis on the evidence by delimiting the purposes for which it could be considered, namely propensity, intent, motive, and lack of mistake.

¶ 25     Defendant acknowledges that he failed to preserve his argument for review by neglecting to specifically object at trial and include the claim in a posttrial motion. See *People v. Herron*, 215 Ill. 2d 167, 175 (2005) (explaining that, to preserve an error for review, a defendant must both object at trial and raise the issue in a posttrial motion). However, he asks us to consider the argument under the plain-error doctrine. A reviewing court will find plain error only when:

"(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

The defendant bears the burden of persuasion under either prong. *Id.* at 565. In applying the plain-error doctrine, we must first determine whether any error occurred. *Id.*

¶ 26     It is well established that "the risk associated with the admission of other-crimes evidence is that it might prove 'too much,' rendering a jury inclined to convict the defendant simply because it believes that he or she is a bad person deserving of punishment." *People v. Perez*, 2012 IL App (2d) 100865, ¶ 45 (quoting *People v. Donoho*, 204 Ill. 2d 159, 170 (2003)). Under the common law, other-crimes evidence is inadmissible to show a defendant's bad character or propensity to commit a crime. *Id.* Such evidence is admissible, however, to establish motive, identity, presence, *modus operandi*, knowledge, intent, common design, or absence of mistake. *Id.*; see Ill R. Evid. 404(b) (eff. Jan. 1, 2011) (codifying the common law on the use of other-crimes evidence).

¶ 27     Section 115-7.3 of the Code creates an exception to the common-law prohibition on the admission of other-crimes evidence to show propensity. Under section 115-7.3, when a defendant is accused of certain sex offenses, evidence of the defendant's commission of other sex offenses "may be admissible (if that evidence is otherwise admissible under the rules of evidence) and may be considered for its bearing on any matter to which it is relevant." 725 ILCS 5/115-7.3(b) (West 2018); see also Ill. S. Ct. R. Evid. 404 (b) (eff. Jan. 1, 2011) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity

therewith except as provided by [several statutory sections including section 115-7.3].") Thus, under section 115-7.3, other-crimes evidence is admissible to show a defendant's propensity to commit sex offenses. *Donoho*, 204 Ill. 2d at 176.

¶ 28    Here, the State's instruction on other-crimes evidence (1) informed the jury that it had received evidence of uncharged conduct "on the issues of the defendant's propensity to commit the [charged] crimes as well as the defendant's intent, motive and lack of mistake" and (2) admonished the jury that it could consider the evidence "only for that limited purpose." "This does not necessarily compel reversal. Other-crimes evidence that is admissible for one reason is not affected by inadmissibility for another reason. When jurors receive a limiting instruction that permits them to consider evidence for a number of reasons, and one of those reasons is determined on appeal to be improper, judgment of conviction must be affirmed despite the overly broad instruction." (Internal citation and question marks omitted.) *People v. Spyres*, 359 Ill. App. 3d 1108, 1113–14 (2005). Defendant does not dispute that the evidence of his uncharged sex offenses was admissible under section 115-7.3. Rather, defendant maintains that the instruction specifying certain purposes for which the other-crimes evidence could be considered was unnecessary and unduly highlighted the evidence, to defendant's prejudice.

¶ 29    The purpose of jury instructions is to convey to the jury the applicable law. *People v. Mohr*, 228 Ill. 2d 53, 65 (2008). "The task of a reviewing court is to determine whether the instructions, considered together, fully and fairly announce the law applicable to the theories of the State and the defense." *Id.* The issue of whether a jury instruction accurately conveys the applicable law to the jury is reviewed *de novo*. *People v. Watt*, 2013 IL App (2d) 120183, ¶ 30. "[I]t is within the trial court's discretion to determine which issues are raised by the evidence and whether an instruction should be given." *Mohr*, 228 Ill. 2d at 65. "A trial court abuses its discretion

if jury instructions are not clear enough to avoid misleading the jury." (Internal quotation marks omitted.) *Id.* at 66.

¶ 30     Defendant contends that, because the other-crimes evidence could be considered for all relevant purposes, a limiting instruction was unnecessary. Defendant notes that, in *Perez*, 2012 IL App (2d) 100865, ¶ 58, we commented that a limiting instruction is not required for evidence that the trial court admits under section 115-7.3 without restriction, because such evidence is, by the statutory text, admissible "for any purpose, *i.e., without limitation*." (Emphasis in original.) Defendant recognizes, however, that a merely superfluous jury instruction does not always create reversible error. *People v. Robinson*, 21 Ill. App. 3d 343, 350 (1974). However, he notes cases supporting the proposition that a trial court may not unfairly emphasize one part of the evidence. See *e.g.*, *People v. McClellan*, 62 Ill. App. 3d 590, 595-96 (1978) (explaining that courts have a "general obligation to avoid giving instructions which unduly emphasize one part of the evidence in a case, [citation], and are not required to give an instruction that would provide the jury with no more guidance than that available to them by application of common sense"); *People v. Godbout*, 42 Ill. App. 3d 1001, 1009 (1976) (the defendant was prejudiced where "the numerous [non-IPI] instructions dealing with the [B]reathalyzer tests unnecessarily emphasized that evidence").

¶ 31     We find defendant's arguments unpersuasive. The need for a limiting instruction for other-crimes evidence admitted under section 115-7.3 depends, logically, on whether the trial court placed limits on the purpose for which the evidence could be considered. Section 115-7.3(b) provides that the other-crimes evidence "may be considered for its bearing on any matter to which it is relevant" (725 ILCS 5/115-7.3(b) (West 2018))—leaving *the trial court* to determine relevancy in the individual case. Here, before trial, the court admitted the other-crimes evidence to show propensity. Later, at the jury instruction conference, the State suggested that the evidence

was relevant to show not just propensity but also intent, motive, and lack of mistake. Notably, the State did not mention certain other potential uses that Illinois law recognizes for other-crimes evidence, such as to show identity, presence, *modus operandi*, and common design. See *Perez*, 2012 IL App (2d) 100865, ¶ 45. The trial court agreed that the evidence was relevant for the additional purposes the State suggested. Thus, the State's instruction served vitally to limit the jury's consideration to the specific purposes that the State proposed and the trial court accepted. Illinois Rule of Evidence 105 (eff. Jan. 1, 2011) states: "When evidence which is admissible *** for one purpose but not admissible *** for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper purpose or scope and instruct the jury accordingly." Here, the State, not defendant, requested the limiting instruction, but "both defendant *and the State* are entitled to jury instructions that fully and fairly set forth the law applicable to the submitted evidence." (Emphasis in original.) *People v. McDaniel*, 2021 IL App (2d) 190496, ¶ 58.

¶ 32 The instruction also did not unfairly prejudice the jury against defendant. To the contrary, the instruction ameliorated potential prejudice from the evidence of uncharged conduct by apprising the jury that such evidence was admitted and that it was relevant for limited purposes. See *Perez*, 2012 IL App (2d) 100865, ¶ 63 (rejecting the defendant's argument that the jury was not apprised of the distinction between the charged and uncharged offenses and noting that "in most cases, the better practice will be to inform the jury of the charged versus uncharged conduct as the evidence is admitted").

¶ 33 For these reasons, we find no error in the trial court's giving the State's instruction. Because there was no error, there was no plain error. *People v. Gumila*, 2012 IL App (2d) 110761, ¶ 58.

¶ 34    Defendant next argues that his sentence was excessive.  He notes that he was acquitted of the most serious charge (predatory criminal sexual assault of a child, alleging that defendant aced his finger in Kr.M's vagina).  He argues that touching a child's leg for sexual gratification does not warrant a 30-year sentence.

¶ 35    "[T]he trial court is in the best position to fashion a sentence that strikes an appropriate balance between the goals of protecting society and rehabilitating the defendant."  *People v. Risley*, 359 Ill. App. 3d 918, 920 (2005).  Thus, we may not disturb a sentence within the applicable sentencing range unless the trial court abused its discretion.  *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000).  A sentence is an abuse of discretion only if it is at great variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense.  *Id.* at 210.  We may not substitute our judgment for that of the trial court merely because we might have weighed the pertinent factors differently.  *Id.* at 209.

¶ 36    In determining an appropriate sentence, relevant considerations include the nature of the crime, the protection of the public, deterrence and punishment, and the defendant's rehabilitative prospects and youth.  *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998).  The weight to be attributed to each factor in aggravation and mitigation depends upon the circumstances of the case.  *Id.* "The seriousness of the crime is the most important factor in determining an appropriate sentence, not the presence of mitigating factors."  *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002).  The trial court need not recite all the factors before imposing a sentence.  *People v. Spicer*, 379 Ill. App. 3d 441, 469 (2007).  It is presumed that the court considered all the factors unless the record indicates the contrary.  *Id.*

¶ 37    Because defendant was previously convicted of two Class 2 or greater felonies, he was subject to Class X sentencing with a range of 6 to 30 years' incarceration.  730 ILCS 5/5-4.5-95(b)

(West 2018); *id.* § 5-4.5-25(a). Recognizing that we may not directly compare sentences across multiple cases (*People v. Fern*, 189 Ill. 2d 48, 55 (1999)), defendant nevertheless argues that, in *Stacey*, our supreme court held that two consecutive terms of 25 years for momentarily grabbing the breasts of two fully clothed teenage girls was excessive relative to the seriousness of the offense. *Stacey*, 193 Ill. 2d at 210-11. The court reduced the sentences to the minimum terms of 6 years. *Id.* at 211-12.

¶ 38 "The propriety of the sentence imposed in a particular case cannot properly be judged by the sentence imposed in another, unrelated case. *Fern*, 189 Ill. 2d at 56. "Simply because a lesser sentence was imposed in another case does not lead to the conclusion that the more severe sentence imposed in the case at hand is excessive." *Id.* "In addition, use of [a] comparative sentencing analysis runs the risk of erroneous conclusions. No two cases are ever truly 'the same.' " *Id.* at 57 (quoting *People v. Terneus*, 239 Ill. App. 3d 669, 677 (1992)).

¶ 39 Here, defendant had a substantial criminal history that included violent crimes and sex crimes. His history, character, and attitudes illustrated a likelihood of recidivism and lack of rehabilitative prospects. The crime was particularly serious in that defendant abused a position of trust. The need for deterrence was also a concern, as the trial court noted. The court carefully considered all the factors and explained its reasoning in imposing a 30-year sentence. That determination was reasonable and thus not an abuse of discretion. Accordingly, defendant's sentence was not excessive.

¶ 40                           III. CONCLUSION

¶ 41 For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 42 Affirmed.